NOT DESIGNATED FOR PUBLICATION

No. 118,152

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

WADE EUGENE HALE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Lyon District Court; W. LEE FOWLER, judge. Opinion filed October 12, 2018. Affirmed in part, vacated in part, and remanded with directions.

*Kai Tate Mann*, of Kansas Appellate Defender Office, for appellant.

*Amy L. Aranda*, assistant county attorney, *Marc Goodman*, county attorney, *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., BRUNS and GARDNER, JJ.

PER CURIAM: Wade Eugene Hale appeals his conviction of two counts of indecent solicitation of a child, raising numerous claims of error. We affirm Hale's conviction but vacate and remand for new findings on the amount of BIDS fees.

*Factual and procedural background*

In December 2015, Hale was charged with two counts of indecent solicitation of a child in violation of K.S.A. 2015 Supp. 21-5508(a)(1) for his conduct with a 15-year-old girl, and one count of aggravated indecent liberties with her 11-year-old sister. Hale was

1

dating the girls' mother at the time. The complaint alleged that Hale offered K.M.S. money to engage in lewd fondling and in sexual intercourse and that he had touched E.C. with sexual intent. The State later dropped the count related to E.C. after she told a forensic interviewer at the Child Advocacy Center (CAC) that Hale was sleeping at the time he touched her and she did not think he meant to do so. After two days of deliberation, the jury returned guilty verdicts on the two remaining counts. The district court sentenced Hale to 18 months' incarceration on each count, to be served consecutively, then placed him on probation to community corrections for 24 months with 24 months' postrelease supervision.

*The events leading to the criminal charges.*

On September 10, 2015, Hale picked K.M.S. and K.S. up from their home while their mother was sleeping, and dropped K.S. off at his home. With K.M.S. still in the car, Hale took some taxi calls, including picking up a dancer with a stage name of "Lilly" at a strip club. Lilly rode with them while Hale took other taxi calls. K.M.S. testified that the three of them went to Casey's convenience store, and store video obtained by the police shows the three in Casey's at 12:30 a.m. on Friday, September 11, 2015. They later dropped Lilly off at her home.

While Hale was alone with K.M.S. in his taxi, he offered K.M.S. $100 to, in her words, "fool around" with him. She could not remember his exact words. She thought "fool around" meant to touch each other inappropriately. This incident formed the basis for Count I of the State's complaint against Hale—indecent solicitation of a child to engage in indecent liberties; lewd fondling and touching.

On cross-examination, K.M.S. testified that the $100 Hale offered her was "just to stick it in," which she understood to mean sexual intercourse. Hale later dropped her off at his house, where K.S. was sleeping on the sofa, and told her she could sleep in his bed

2

while he went to wake K.M.S.'s mom and take her to work. K.S. tried to wake K.M.S. for school "a couple hours later" but K.M.S. was too tired to get up, so K.S. took the bus to school and K.M.S. went back to sleep.

When Hale returned, he climbed into his bed. K.M.S. stayed in the bed and talked with him for a couple of hours. He then offered her $150 to have sex with him, explaining that $100 would be enough for a phone and a phone card and she could spend the other $50 on other items for herself. She testified that she avoided saying yes or no. She told the CAC interviewer that when Hale said he wanted to cuddle, "I was like, nope, no, no sir" and "I was like no . . . don't touch me get away from me." It is not clear whether she spoke these words to Hale or was simply describing her unspoken thoughts to the interviewer. When Hale lifted up the blanket and said he wanted to cuddle, she got out of bed and went to take a shower. After she dressed, Hale took her to IHOP for breakfast and then dropped her off at school.

*K.M.S. discloses the solicitations.*

While at IHOP that Friday, K.M.S. messaged a friend, arranged to meet, and told him what had happened. He told her she should tell someone. She did not initially want to tell "an authority" because she did not want to jeopardize her sisters' chances of reintegration into the home.

K.M.S. did, however, report the matter to Terrence Taylor, a school counselor, on the condition that he not call DCF until she had a chance to talk to her mom over the weekend. K.M.S. assured the counselor that she was going to be okay over the weekend and would not be around Hale. She agreed to check in with him the next week. K.M.S. explained to the counselor that she did not want to tell her mom because her mom was happy in her relationship with Hale and Hale was their financial support. She testified, "I

3

figured I could deal with being offered the money rather than if I was being touched or something."

K.M.S. also talked to her teacher, Carolyn Lee, who testified that K.M.S. told her she was overwhelmed and stressed with a decision she had to make because her mom's boyfriend had offered her money for sex. Lee said K.M.S. was trying to decide if she should do it to get money to help her mom with bills. When K.M.S. checked in with the teacher and counselor after the weekend, they called DCF on Tuesday, September 15.

*The forensic interview with DCF.*

DCF investigator Kayla Delgado testified that she conducted a forensic interview with K.M.S. at the CAC on September 23. K.M.S. told her that a few days after Hale propositioned her, her 11-year-old sister, E.C., woke her one morning and told her that Hale had touched her on her privates. E.C. had been on her mom's bed, watching television, while Hale slept in the same bed. But when E.C. was interviewed at the CAC, she said she did not think Hale had meant to touch her and that he had been sleeping. Because of this, the State dismissed Count III, which had charged Hale with touching E.C., believing it could not prove sexual intent.

*The State moves to admit evidence.*

Before trial, the State moved in limine to admit two categories of evidence pursuant to K.S.A. 2015 Supp. 60-455 to show propensity to commit sex acts with children and to explain why K.M.S. reported the solicitations. The first category consisted of conversations of a sexual nature between Hale and K.M.S. before the dates alleged in Counts I and II. The district court found this evidence admissible to prove preparation, plan, and propensity. This ruling is not challenged on appeal.

4

The second category of evidence is at issue here. The State sought to admit evidence that K.M.S. decided to report the crimes only after E.C. told her that Hale had touched her on her privates. The motion stated that the evidence was probative of Hale's propensity to commit sexual acts with a minor and would also "help to explain why K.M.S. chose to disclose when she did." The district court denied this motion and excluded evidence of E.C.'s statements alleging that Hale had "touched her privates," but added it may modify that ruling if Hale "challenged [K.M.S.'s] motivation or delay in disclosing her own allegations" against him.

After two days of deliberation, the jury returned guilty verdicts on the two counts of indecent solicitation of a child in violation of K.S.A. 2015 Supp. 21-5508(a)(1).

*Did the district court abuse its discretion in denying Hale's motion for a mistrial due to violation of the order in limine?*

We first address Hale's argument that the district court erred by denying his motion for a mistrial after a State's witness gave testimony that violated the court's order in limine.

*Standard of review*

We apply an abuse of discretion standard in reviewing a district court's denial of a motion for mistrial. *State v. McCullough*, 293 Kan. 970, 980-81, 270 P.3d 1142 (2012). Judicial discretion is abused where the district court's decision is based on an error of law or fact or if no reasonable person would have taken the view adopted by the district court. 293 Kan. at 981.

*Discussion*

A.I., K.M.S.'s boyfriend at the time of the charged acts, testified that the reason K.M.S. wanted him to pick her up from her home one day was "basically that [Hale] tried to touch her younger sister." Hale immediately moved for a mistrial. The district court denied the motion, and instructed the jury to disregard A.I.'s answer. Both parties acknowledge that A.I.'s testimony violated the in limine order.

The record shows that the State had cautioned A.I. about the in limine order right before he testified, and that the district court found the witness had acted independently. In denying Hale's later motion for new trial, the district court revisited this issue. It determined that the State had not intentionally violated the order in limine, stating: "I'm not sure anybody could have really had control over him [A.I.] just because of the way he presents himself." The district court noted that it had admonished the jury at the time and that it presumed the jury followed its instructions. The district court further found no indication that A.I.'s statement in violation of the order in limine had impacted on the jury's decision or affected its decision-making process, so it denied the motion for new trial.

Our question is whether A.I.'s testimony warranted a mistrial. K.S.A. 22-3423(1)(c) provides that a district court may declare a mistrial if "[p]rejudicial conduct, in or outside the courtroom, makes it impossible to proceed with the trial without injustice to either the defendant or the prosecution." When presented with a motion for mistrial, the district court must determine whether fundamental failure occurred and, if so, whether the prejudicial conduct could be cured or mitigated through instruction or admonition to the jury. If not, the trial court must determine whether the degree of prejudice results in an injustice and, if so, must declare a mistrial. *State v. Sherman*, 305 Kan. 88, 118-19, 378 P.3d 1060 (2016).

6

Because the parties agree the in limine order was violated and the district court gave a limiting instruction, we presume that the district court found a fundamental error. See *State v. Sean*, 306 Kan. 963, 988, 399 P.3d 168 (2017) (presuming district court found a fundamental error because it gave a limiting instruction). Our focus is thus on the second step of the analysis—whether the district court abused its discretion in finding that the failure did not work an injustice. *McCullough*, 293 Kan. at 981. This error, if any, is not of constitutional magnitude so is governed by the harmless error standard of K.S.A. 2017 Supp. 60-261. Under this standard, the State bears the burden to show "no reasonable probability the error affected the trial's outcome in light of the entire record." *McCullough*, 293 Kan.at 982 (rejecting prior caselaw that required the defendant to prove both error and prejudice from evidentiary errors).

Violations of orders in limine have some inherently prejudicial effect because, to obtain an order in limine, a defendant must necessarily show that "the mere offer or reference to the excluded evidence would tend to be prejudicial." *State v. Santos-Vega*, 299 Kan. 11, 25, 321 P.3d 1 (2014). Here, however, the violation occurred only once, was not solicited by the State, and did not happen again. The district court swiftly instructed the jury to disregard the previous question and answer. As a general rule, we presume that juries follow the trial court's instructions. *State v. Peppers*, 294 Kan. 377, 392, 276 P.3d 148 (2012). We do so here.

There is little reason to believe that A.I.'s violation of the motion in limine had any effect on the outcome of Hale's trial. A.I. said that K.M.S. told him Hale had tried to touch her younger sister. But because K.M.S. had several younger sisters, this accusation was vague as to who the intended victim was. Nor did A.I.'s statement accuse Hale of having touched anyone. To the contrary, A.I.'s statement that Hale had tried to do something suggests that he had failed to do so and thus had not actually touched the sister. And the language lacks specificity, giving rise to the possibility that Hale had tried

to touch the younger sister in the same way that he had tried to touch K.M.S.—by soliciting her to do so.

The evidence against Hale was significant. K.M.S.'s report of his acts was largely consistent to her friend, her counselor, her teacher, and later to her mother and to CAC. It was confirmed in part by the video from Casey's. The weight of evidence against the defendant, coupled with the general nature of A.I.'s statement, negated any potential prejudice from a violation of the district court's order in limine. See *State v. Gleason*, 277 Kan. 624, 642, 88 P.3d 218 (2004). We find that the failure was curable; thus, we find no abuse of discretion in the district court's denial of the motion for a mistrial.

*Did the State commit reversible prosecutorial error in closing argument?*

Hale next contends that the State committed reversible prosecutorial error in its closing argument by referencing facts not in evidence and by referring to topics barred by the order in limine. Hale asserts that statements made by the prosecutor in closing argument suggested that Hale had actually touched K.M.S. or one or more of her sisters, compounding the effect of A.I.'s statement.

*Standard of review*

The prosecutorial error analysis has two steps simply described as error and prejudice. *Sherman*, 305 Kan. at 109. These require us to decide:

> "[W]hether the prosecutorial acts complained of fall outside the wide latitude afforded
> prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that
> does not offend the defendant's constitutional right to a fair trial. If error is found, the
> appellate court must next determine whether the error prejudiced the defendant's due
> process rights to a fair trial. In evaluating prejudice . . . [this court applies] the traditional
> constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18,

8

87 S. Ct. 824, 17 L.Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011), *cert. denied* [565 U.S. 1221 (2012)]." *Sherman*, 305 Kan. at 109.

*Discussion*

1. *Existence of error*

Hale challenges three statements made by the prosecutor. To determine whether reversible prosecutorial error occurred, we first analyze whether the complained-of conduct falls outside the wide latitude afforded prosecutors in presenting their cases. *Sherman*, 305 Kan. at 109. A prosecutor's arguments must be consistent with the evidence presented at trial. *State v. Pribble*, 304 Kan. 824, 832, 375 P.3d 966 (2016). Commenting on facts not in evidence during closing argument is clearly improper and outside the bounds of that latitude. 304 Kan. at 832.

*The first challenged statement*

Hale first argues that the State referred to physical touching in its closing argument, without any basis in the admissible evidence, by saying:

"You heard evidence from [K.M.S.], Nope, that wasn't going to happen. She could deal with him talking to her, but she couldn't deal with him touching her. She couldn't deal with him touching her sister, so she made that report that day."

Hale argues that the reference to "touching her sister" violates the order in limine. But that order was not broad and did not bar all reference to K.M.S.'s sister or sisters. Instead,

9

it excluded only evidence of E.C.'s statements alleging that Hale had "touched her privates."

At the hearing on Hale's later motion for new trial, the district court listened to the audio recording of the State's closing argument and determined that the prosecutor had said, "she couldn't deal with him touching her sisters," plural. It reasoned that since the order in limine referred only to a particular incident of touching of one sister, the prosecutor's statement may not have violated the order in limine. It found that the prosecutor was referring to K.M.S.'s general state of mind and her decision-making process regarding making a report. Substantial competent evidence supports that conclusion.

Hale also asserts that these statements have no support in the evidence because K.M.S. repeatedly testified that Hale did not touch her and there was no admissible evidence that he touched E.C. But viewed in context, the State did not suggest that Hale had touched either girl—only that K.M.S. told others because she hoped to prevent future touching of her or her sister. As Hale concedes, K.M.S. repeatedly testified that Hale did not touch her. She testified that "I figured I could deal with being offered the money rather than if I was being touched or something." The prosecutor's statement was supported by the evidence or the reasonable inferences therefrom, thus we find no error.

*The second challenged statement*

Hale next challenges a statement the State made during rebuttal. Hale had suggested during his closing argument that K.M.S. had fabricated her complaints because she wanted to break up her Mother's relationship with Hale. The State responded by asking these rhetorical questions during its rebuttal:

10

"Does that sound like a child that is manipulating and trying to break up a relationship? She was worried about her sisters. She was worried that something might happen to them. Was he going to try to touch her? Was he going to try to touch them?"

We agree with the State that these questions asked about the possibility of Hale *trying* to touch the girls in the future. The State clarified elsewhere in its closing that no touching had occurred.

Hale nonetheless argues that these statements were error for three reasons. First, prosecutors in child sex crime cases cannot appeal to the parental instincts of jury members or urge the jury to convict to protect the victim. *State v. Duong*, 292 Kan. 824, 834, 257 P.3d 309 (2011).

We agree that it is improper for a prosecutor to make statements during closing argument "intended to inflame the passions or prejudices of the jury or to divert the jury from its duty to decide the case based on the evidence and the controlling law." *State v. Tosh*, 278 Kan. 83, 90, 91 P.3d 1204 (2004), *overruled on other grounds by State v. Sherman*, 305 Kan. 88, 378 P.3d 1060 (2016). But Hale shows no intent by the prosecutor, and the statements above are unlike statements that we have previously found appeal to parental instincts or urge the jury to convict in order to protect. See, e.g., *State v. Martinez*, 290 Kan. 992, 1015, 236 P.3d 481 (2010) (finding let the victim know "she did the right thing" by reporting the crime improper); *Tosh*, 278 Kan. at 92 (finding "[W]hen [the victim] was little, and even today, her father failed to protect her. He raped her. You can protect her. You can find him guilty" improper); *State v. Henry*, 273 Kan. 608, 621, 44 P.3d 466 (2002) (finding prosecutor's comment encouraging jury to think about Mother's Day and sympathy for the feelings of victim's mother improper).

Second, Hale contends prosecutors are not allowed to make statements that inflame the passions or prejudices of the jury or distract the jury from its duty to make

11

decisions based on the evidence and the controlling law. *State v. Thurber*, 308 Kan. 140, 162, 420 P.3d 389 (2018)

That is an accurate statement of law. But Hale fails to show that these questions inflamed the passions or prejudices of the jury. Instead, this case is more like *State v. Anderson*, No. 111,061, 2015 WL 3555353, at *2-3 (Kan. App. 2015) (unpublished opinion). There, as here, the prosecutor's remarks were in response to the defense theory that the young victim made up the account of her sexual abuse. We found it proper for the prosecutor to posit rhetorical questions challenging the improbability of motives that the victim may have had to lie about the abuse. Similarly, in *State v. Glasgow*, No. 113,155, 2016 WL 4582542, at *8 (Kan. App. 2016) (unpublished opinion), *rev. denied* 306 Kan. 1323 (2017), we found no error under similar circumstances. There, the defense suggested the victim lied by dishonestly accusing Glasgow of sexual abuse due to the ongoing custody dispute and associated familial discord. In response to this defense theme, the prosecutor asked jury rhetorical questions about the victim's motivation to lie about such a serious crime. Here, as there, the challenged comments do not rise to the level of prosecutorial misconduct because they are within the wide latitude given to prosecutors in discussing evidence.

Third, Hale asserts that the questions were improper because they suggested facts not in evidence. Hale is correct that K.M.S. did not testify that she was worried about her sisters. Nonetheless, the prosecutor's statements were based on the evidence, as both the school counselor and K.M.S.'s teacher testified to that effect. When asked if K.M.S. was worried about anything else, the school counselor testified that K.M.S. was worried about her 14-year old sister's (K.S.) safety:

> "She, she felt like she could handle the situation knowing it wasn't right, but she was
> fearing if she was gone and her sister was there, who was younger—I think her sister was
> in middle school at the time . . . if she would be strong enough to get out of the situation."

12

When asked what type of situation, the counselor stated, "a similar type of situation."

The teacher testified that K.M.S. had told her that she had to make "a tough decision" about whether to accept Hale's proposition, easing her family's financial worries. The teacher agreed that K.M.S. was worried that she or her siblings would be taken out of the home and that K.M.S. was concerned because she did not want her family to be split up.

In closing argument, a prosecutor may draw reasonable inferences from the evidence presented at trial. Taken in context, the challenged statements were based on reasonable inferences about K.M.S.'s state of mind and motivation to report. They do not rise to the level of prosecutorial error.

*The third challenged statement*

The third statement Hale challenges gives us more pause:

"[Mr. Hale] was the best boyfriend [her mother] had in a long time, with the exception of his inappropriate contact and talks with [K.M.S.]."

Hale argues that by referring to "inappropriate contact *and* talks" the prosecutor referred to something other than talking, yet no evidence of physical contact between Hale and K.M.S. was presented. The State agrees no evidence of physical contact was presented. But it contends that taken in context, "inappropriate contact" did not refer to physical touching but instead applied the dictionary denotation of "association, relationship, connection, or establishing communication with someone."

Under this broader definition, Hale's being in bed with K.M.S., and his driving her around in his taxi with a dancer from a strip club until the wee hours in the morning on a school night, are among acts in evidence that could reasonably be considered inappropriate contact other than talking. We believe this statement was within the wide latitude given to prosecutors in discussing evidence, and was not error.

2. *Was the prosecutorial error harmless?*

Even assuming some error, however, we find no prejudice. The constitutional harmless error standard applies here. The burden is on the State to show beyond a reasonable doubt—in light of all of the evidence—no reasonable possibility that these errors contributed to the verdict. *Sherman*, 305 Kan. at 120. We note that the district court instructed the jury that closing arguments are not evidence, and we presume the jury followed that instruction.

Our evaluation of prejudice must be made in light of all of the admissible evidence. The evidence included testimony from K.M.S.; testimony from school personnel about what K.M.S. reported to them; a DVD of K.M.S.'s interview at CAC, redacted in accordance with the order in limine; and security camera footage of K.M.S., Hale, and Lilly at Casey's, consistent with K.M.S.'s testimony that Hale took her and Lilly there in his cab. K.M.S.'s statements in the CAC interview and the trial were inconsistent in part as to what happened in the cab and the timeline and order of events, but were consistent as to basic elements of the offenses.

The evidence against Hale was overwhelming if the jury chose to believe K.M.S. And as we noted above, the prosecutor's statements were narrower and thus less potentially prejudicial than Hale paints them to be. More importantly, the evidence and arguments made clear that no touching was alleged to have occurred. The State has met its burden to

14

show that any error in remarks it made during closing argument was constitutionally harmless.

*Did the district court abuse its discretion by denying Hale's motion for new trial?*

Hale argues that even if neither the violation of the order in limine nor the prosecutorial error is reversible error, the two together show error, warranting a new trial.

*Standard of review*

A district court may grant a defendant's motion for a new trial "if required in the interest of justice." K.S.A. 2017 Supp. 22-3501(a). We review the denial of a motion for new trial for an abuse of discretion. *State v. Schumacher*, 298 Kan. 1059, 1069, 322 P.3d 1016 (2014). A district court abuses its discretion if it bases its decision on an error of fact or law or takes a position with which no reasonable person would agree. *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011).

*Discussion*

Hale moved for a new trial, arguing that A.I.'s violation of the order in limine coupled with the prosecutor's error during closing argument deprived him of a fair trial. He argues that the errors the State made in closing argument "reinforced the notion" that a minor child was going to be touched if Hale were not convicted. He further argues that these errors distracted the jury from determining whether he committed the crimes charged and caused them to convict him to prevent possible future harm to children.

But we have found no error. In a cumulative error analysis, an appellate court aggregates all errors and, even though those errors would individually be considered harmless, analyzes whether their cumulative effect on the outcome of the trial is such that

collectively they cannot be determined to be harmless. *State v. Tully*, 293 Kan. 176, 205, 262 P.3d 314 (2011). Hale cannot avail himself of the cumulative error doctrine because no error occurred. See *State v. Love*, 305 Kan. 716, 737, 387 P.3d 820 (2017) ("[I]f there is no error or only a single error, cumulative error does not supply a basis for reversal.").

*Did the district court commit clear error by failing to give a non-requested unanimity instruction for count II?*

Hale next contends that the district court erred by not giving a unanimity instruction for Count II, which could have been based on multiple acts. But Hale did not request a unanimity instruction at trial.

*The relevant law*

Under Kansas law, a defendant is entitled to a unanimous jury verdict. K.S.A. 22-3421; *State v. Santos-Vega*, 299 Kan. 11, 18, 321 P.3d 1 (2014). When a case involves multiple acts, any one of which could constitute the crime charged, the jury must be unanimous in finding which specific act constitutes the crime. See *State v. De La Torre*, 300 Kan. 591, 595, 331 P.3d 815 (2014). To ensure jury unanimity in these cases (known as multiple acts cases), the State must elect which act it is relying upon for the charge, or the court must instruct the jury that it must unanimously agree on the specific act constituting the crime charged. *State v. Akins*, 298 Kan. 592, 618, 315 P.3d 868 (2014); *State v. Voyles*, 284 Kan. 239, 244-45, 160 P.3d 794 (2007).

A court follows a three-part test when analyzing multiple acts cases. *State v. King*, 297 Kan. 955, 979, 305 P.3d 641 (2013). First, it must determine whether the case involves multiple acts or a unified course of conduct. 297 Kan. at 979. This is a question of law over which an appellate court exercises unlimited review. *Santos-Vega*, 299 Kan. at 18. If the court finds the defendant's conduct was unitary, then the analysis ends and

16

the district court is affirmed. See *Voyles*, 284 Kan. at 244. If, however, the court decides multiple acts were involved, the next question is whether error was committed because either the district court failed to instruct the jury to agree on the specific act for each charge or the State failed to inform the jury which act to rely upon during its deliberations. *King*, 297 Kan. at 979. Finally, if error was committed, the appellate court must determine whether the error was harmless. 297 Kan. at 979.

Because Hale neither requested a unanimity instruction during trial nor objected to its absence, he must show clear error. K.S.A. 2015 Supp. 22-3414(3). This means the defendant must firmly convince us of a real possibility that the jury would have rendered a different verdict without the error. *State v. King*, 299 Kan. 372, 379, 323 P.3d 1277 (2014). The burden to show clear error under K.S.A. 2015 Supp. 22-3414(3) remains on the defendant. 299 Kan. at 379.

*Discussion*

Hale focuses on Count II, solicitation to engage in aggravated indecent liberties, and argues that the State introduced evidence of two acts that could have constituted that crime and thus, a unanimity instruction was required. The threshold question is whether we are presented with a multiple acts case, which is a question of law over which we exercise unlimited review. *King*, 299 Kan. at 379. "Multiple acts" are legally and factually separate incidents that independently satisfy the elements of the charged offense. See 299 Kan. at 379; *State v. Soto*, 299 Kan. 102, 111, 322 P.3d 334 (2014).

Count I charged that on or between the 10th day of September, 2015, and the 11th day of September, 2015, Hale solicited K.M.S. to engage in indecent liberties. Count II was identical, but for its date (which stated only the 11th of September, 2015) and its allegation that Hale solicited K.M.S. to engage in *aggravated* indecent liberties.

17

The record includes K.M.S.'s testimony about three separate events: (1) in the taxi, Hale offered her $100 to "fool around," which she understood to mean touching each other; (2) in the taxi, Hale offered her $100 to "just stick it in" which she understood to mean sexual intercourse; (3) in Hale's bed the next morning, he offered her $150 to have sex with him. Both the second and third acts could arguably constitute the crime charged in Count II, solicitation to engage in aggravated indecent liberties; thus, we find multiple acts.

Once we find multiple acts, our second question is whether error was committed. *Voyles*, 284 Kan. at 244. To avoid error, either the State must inform the jury which act to rely on in its deliberations or the court must instruct the jury to agree on a specific criminal act. 284 Kan. at 244-45. The district court gave no relevant jury instruction here. So we focus on whether the State adequately told the jury which act to rely on in its deliberations. The State need not make an explicit election but instead may indicate to the jury which act to rely upon for which count through its opening statement and closing argument and by listing specific dates in the jury instructions. *State v. Moyer*, 306 Kan. 342, 362-63, 410 P.3d 71 (2017). The jury instructions here listed specific dates.

In its closing argument, the State told the jury Count I pertained to "the conversation when the two were riding around in the taxi . . . he offered her $100 for fooling around." It distinguished Count II, saying that Count II related to the conversation in bed the morning after the taxi ride. The prosecutor stated: "We heard evidence as to Count II that the morning of September 11, when he came back after work, he laid down in bed with [K.M.S.] . . . he offered her $150 this time. *$150 to see if he could stick it in*, have sexual intercourse with her." (Emphasis added.) Consistently, in rebuttal the prosecutor stated "between September 10 and 11 that the defendant solicited [K.M.S.] to engage in lewd fondling" and "on September 11, the following morning, . . . [Hale]solicited [K.M.S.] to engage in sexual intercourse."

18

The possibility of multiple acts was created by the phrase italicized above. We agree that the State failed to make an effective functional election. The prosecutor's mention of the "stick it in" solicitation for $100 which occurred in the taxi could have resulted in a lack of jury unanimity as to whether Hale's $100 offer in the taxi or Hale's $150 offer in the bed was the basis for Count II. It is possible that some jurors may have relied on one act and some another, resulting in a lack of unanimity on all of the elements necessary for a valid conviction.

We thus reach the question whether this error is reversible. *King*, 299 Kan. at 381. Our Supreme Court has recognized that where, as here, a trial is a credibility contest between the victim and the defendant and the defendant has made a general denial of all of the acts, the reviewing court made no reversible error in the omission of an instruction or election. See 299 Kan. at 381; *Voyles*, 284 Kan. at 253 (stating "The Court of Appeals accurately observed that Kansas appellate courts have held a 'failure to instruct' in multiple acts cases to be reversible error *except when* the defendant presents a unified defense, *e.g.*, a general denial."). The jury's primary task in this case was to determine K.M.S.'s credibility, faced with Hale's general denial.

But even assuming that we are not dealing with simply a unified defense here, we find no clear error. Hale's sole argument on this issue is to state: "the jury was faced with nothing more than allegations, and allegations occurring over the span of less than a day. Given this, had the jury been instructed to focus only on one act, the result likely would have been different." Hale has abandoned this issue by inadequately briefing it. See *State v. Williams*, 303 Kan. 750, 758, 368 P.3d 1065 (2016) (holding appellants waive or abandon an issue when they fail to brief it).

Even if we were to reach the merits, we would not reverse. We are not firmly convinced of a real possibility that the jury would have reached a different verdict but for the prosecutor's inclusion of the "stick it in" solicitation in discussing Count II. The

19

inclusion of that reference was unlikely to confuse the jury, because K.M.S. testified that "sexual intercourse" and "just stick it in" meant the same to her. Either act was sufficient to convict Hale of solicitation to engage in aggravated indecent liberties with a child. Conversely, had that reference been omitted, the jury had ample evidence to convict Hale of offering K.M.S. $150 to have sexual intercourse with him in his bed, warranting the same conviction. Thus Hale has shown no reason to reverse. See *State v. Colston*, 290 Kan. 952, 970, 235 P.3d 1234 (2010) (finding that the focal credibility contest between an accused sex abuser and his victim categorically resolved by the jury in favor of the victim rendered a multiple acts issue harmless).

*Did the inclusion of a factually inappropriate section in an otherwise correct jury instruction constitute clear error?*

Hale next contends that certain portions of jury Instruction 10, which defined indecent liberties and aggravated indecent liberties, are legally erroneous. Hale did not object to this instruction at trial, so we apply the same clear error standard we applied above.

*Discussion*

Hale argues that two portions of jury Instruction 10 are legally inappropriate. Hale's first argument centers on the third paragraph of the instruction defining indecent liberties and aggravated indecent liberties. The first two paragraphs define those crimes as they pertain to a "child who is 14 or 15 years old," but the last paragraph defines them only as they pertain to a "child who is 14 years old." The State acknowledges that the last paragraph is factually inappropriate because the evidence was uncontroverted that K.M.S. was 15 at the time of the charged crimes.

20

But the additional, unnecessary language did not give the jury an alternative reason to convict Hale. This last paragraph is merely superfluous. See *State v. Bailey*, 292 Kan. 449, 459, 255 P.3d 19 (2011) (erroneous addition of language in an instruction was harmless because removing it would not have changed the outcome of the trial). Superfluous does not equate to prejudicial. See *State v. Miller*, No. 109,716, 2015 WL 3632029, at *6 (Kan. App. 2015) (unpublished opinion) (superfluous jury instruction may be "legal clutter" but "seldom would cause actual prejudice to one side or the other"). Here, the instruction caused Hale no legal harm, so he is entitled to no legal remedy.

Hale's second argument is that aggravated indecent liberties requires that the child "does not consent" to lewd fondling, whereas solicitation is an attempt to gain the child's consent and thus is legally inconsistent with that language. This legal argument, however, does not apply here. As discussed above, Count II concerned Hale's proposition for sexual intercourse, and the jury instruction regarding sexual intercourse did not include any element of consent or lack thereof. For this reason, the jury instruction was legally appropriate as to the sexual intercourse means of committing aggravated indecent liberties. And for the same reasons, Hale has not shown a real possibility the jury would have rendered a different verdict without the error.

*Did cumulative error deny Hale a fair trial?*

Hale next contends that cumulative error denied him a fair trial. He focuses on the cumulative effect of each of the errors alleged above, coupled with the jurors' question during deliberations about the difference between indecent liberties and aggravated indecent liberties.

But we have found no error. Hale cannot avail himself of the cumulative error doctrine because no error occurred. See *Love*, 305 Kan. at 737.

21

*Did the district court err in setting the amount of BIDS fee?*

Hale contends that the district court failed to address each of the factors required by K.S.A. 22-4513(a) in setting the amount of Board of Indigents' Defense Services (BIDS) fees he owes. K.S.A. 22-4513(a) requires a defendant to reimburse BIDS for defense services expenditures. The statute also provides: "In determining the amount and method of payment of such sum, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of such sum will impose." K.S.A. 22-4513(b). The Kansas Supreme Court has explained that "the sentencing court, at the time of initial assessment, must consider the financial resources of the defendant and the nature of the burden that payment will impose explicitly, stating on the record how those factors have been weighed in the court's decision." *State v. Robinson*, 281 Kan. 538, 546, 132 P.3d 934 (2006).

Here, the district court found only:

"I'm going to require that you reimburse the State for your attorney's fees in the amount of $1,000, which is about 20 percent—probably less than 20 percent of the total attorney's fees in this case. I understand that you . . . have a current employment and you're going to work for Dolly Madison, which is a reasonably good job. I'm going to make you reimburse some of your attorney's fees and the application fee, so I'm using the $1,000."

This partially takes into account the defendant's financial resources, but does not address the burden that payment will impose, or how the court weighed those two factors. Because those factors must be explicitly addressed on the record, we must remand for the district court to make those findings. That determination could result in Hale paying more or less than the 20% the district court previously required him to reimburse.

We affirm Hale's conviction, vacate in part, and remand for new findings on the amount of BIDS fees.