No. 59,428

STATE OF KANSAS, *Appellee,* v. MICHAEL A. ANDERSON, *Appellant.*

(732 P.2d 732)

Opinion filed February 20, 1987.

*Rosanne Piatt,* assistant appellate defender, argued the cause and *Benjamin C. Wood,* chief appellate defender, was with her on the brief for appellant.

*C. Douglas Wright,* county attorney, argued the cause and *Natalie G. Haag,* deputy county attorney, and *Robert T. Stephan,* attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

HERD, J.: This is a direct appeal by the appellant, Michael A. Anderson, from his jury convictions of aggravated robbery (K.S.A. 21-3427) and conspiracy to commit aggravated robbery (K.S.A. 21-3302).

On April 14, 1985, Robert Grout was on duty at Grose's Grocery Store in Arkansas City. At approximately 7:30 p.m., Grout was alone in the back of the store when he was confronted by a stockily built black man wearing a nylon hose over his face and carrying a sawed-off shotgun. The man "ushered" Grout to the front of the store where a second man (described only as a "white man" with a ski mask) was attempting to open the cash register drawer. After forcing Grout to open the cash register, the

two men made him lie face down on the floor. The men then bound Grout's hands with electrical tape, put the money from the cash register in a brown paper sack, and left the store. Grout could hear the men leave the store and go east on sixth street, which runs by the store. A few seconds after the men left the store, Grout managed to free himself and peeked outside the door from a crouched position. When he didn't see anything, Grout immediately proceeded to call the police.

At trial, Lisa Swanson testified on behalf of the State. Miss Swanson identified the appellant and stated that in April 1985 the appellant shared an apartment with her sister, Vickie Shetler. Miss Swanson testified that on the night of April 14, 1985, she was in her sister's apartment along with her sister, the appellant, and a second man, Donald Anderson. The four of them rode in Vickie's car with Vickie driving to Grose's Grocery Store for the purpose of robbing the store. Miss Swanson testified that, prior to leaving for the store, she observed the appellant putting on two pairs of long johns, a pair of bibbed overalls, a heavy plaid coat, and a ski mask. She also stated she watched her sister Vickie put makeup on Donald Anderson to "make him look whiter," and put eyeliner over his right eye to conceal a scar. Miss Swanson further stated when the four of them left for the grocery store, the appellant was carrying a double-barreled sawed-off shotgun, which he stated he would use "if he had to." Finally, Miss Swanson testified that after leaving Vickie's apartment, the four drove to Grose's and circled around the block until the store wasn't busy, and then the appellant and Donald Anderson got out of the car in the store's parking lot. Miss Swanson and her sister then drove to the alley where they were to meet the two men, but left early when nearby dogs began to bark. They drove around awhile and finally pulled up to the corner where Grose's is located. There, they saw Grout crouched near the door looking around, so they drove on. They soon came upon the appellant and Donald Anderson. Both men were running and the appellant was carrying a grocery sack. After the men were picked up, the four of them returned to Vickie's apartment, where the appellant removed his extra clothing and Donald Anderson removed his makeup. The appellant and Donald Anderson then went into the bedroom where they emptied the paper sack, which contained cash, food stamps, and other papers.

Vickie Shetler also testified at trial. Her testimony corroborated her sister's testimony except Miss Shetler testified that Nanette Houston (another woman living in Miss Shetler's apartment) and not Miss Shetler applied makeup to the appellant and not to Donald Anderson. Further, Miss Shetler testified that Donald Anderson, not the appellant, wore a nylon hose over his face to disguise himself.

The appellant testified on his own behalf at trial, stating that he was in Oklahoma City on April 14, 1985, and that Vickie Shetler drove him there. No other witnesses confirmed the defendant's alibi.

Prior to trial, Donald Anderson pled guilty to one count of aggravated robbery. However, at the appellant's trial and in the presence of the jury, Donald Anderson invoked his Fifth Amendment privilege. The trial court determined that Anderson had no privilege and threatened to hold him in contempt if he refused to testify. Upon questioning, Donald stated he could not remember if the appellant was involved in the grocery store robbery.

The jury found Michael Anderson guilty of aggravated robbery and conspiracy to commit aggravated robbery. He timely appeals.

Appellant first challenges the sufficiency of the evidence to sustain his convictions. He argues the only evidence linking him to the robbery was the testimony of Vickie Shetler and her sister Lisa Swanson. Appellant points to the fact that Vickie and Lisa's testimony differed regarding which of the two men—Michael or Donald—wore makeup designed to make him look whiter. Appellant fails to mention, however, that the women testified identically on the other important facts and that on cross-examination Miss Shetler testified consistently with Miss Swanson. However, to refute the women's testimony and to bolster his contention of insufficient evidence, the appellant points to a number of factors going to the credibility of the witnesses.

The scope of appellate review when the defendant challenges the sufficiency of evidence to support a conviction is whether the evidence, viewed in a light most favorable to the prosecution, convinces the appellate court that a rational factfinder could

have found the defendant guilty beyond a reasonable doubt. *State v. Van Cleave,* 239 Kan. 117, 121, 716 P.2d 580 (1986).

The testimony of Lisa Swanson and Vickie Shetler was in agreement on all of the essential facts. They testified the appellant and Donald Anderson had discussed robbing the grocery store prior to April 14, 1985; that they rode with the appellant and Donald Anderson to the grocery store the evening of the crime and watched the two men enter the store; that the appellant carried a sawed-off shotgun with him into the store; and that they drove the men back to Miss Shetler's apartment after the robbery and saw that the brown paper bag carried by the appellant contained cash, checks, and food stamps.

It is for the jury, and not this court, to judge the credibility of witnesses. The testimony of Lisa and Vickie clearly provided sufficient basis upon which a rational factfinder could determine that the appellant was guilty of the crimes charged.

Appellant next alleges the trial court erred in ruling that Donald Anderson did not have a Fifth Amendment privilege against self-incrimination and in compelling him to testify, causing prejudice to the appellant. Let us first review the proceedings in the trial court relating to this issue.

Prior to trial, Donald Anderson pled guilty to one count of aggravated robbery. Sometime thereafter, he moved to withdraw his plea but this motion was denied. Donald had not been sentenced, nor had the appeal time run on the denial of his motion to withdraw his plea when he was called to testify in Michael Anderson's trial. Donald Anderson was represented by court-appointed counsel during the plea proceedings.

When the State initially called Donald Anderson to testify, defense counsel immediately asked to approach the bench, where an off-the-record discussion was held. On the record, defense counsel objected to the admission of Donald's testimony but the trial court ordered him sworn in. On the stand, he gave his name and address and identified the appellant. He then refused to testify further without consulting his attorney. An off-the-record discussion again ensued, after which the State again attempted to question him. Donald admitted to participating in the armed robbery with Michael Anderson but again refused to answer any further questions without speaking to his

attorney. The court then recessed the jury for the evening, and proceeded with its own examination of Donald. The court advised him that, in view of his guilty plea, he had no privilege against self-incrimination. The witness responded that he would prefer not to say anything. Further discussion was held and it was decided that the point would be argued again the next morning. After lengthy arguments the following morning (out of the presence of the jury), the court determined that the witness could not claim a Fifth Amendment privilege. When recalled to testify, Donald Anderson stated he could not remember whether Michael Anderson participated in the robbery.

The appellant argues the trial court erred in compelling Donald Anderson to testify and relies on *State v. Crumm,* 232 Kan. 254, 654 P.2d 417 (1982). In *Crumm,* Mrs. Hobson (the mother of the defendant) refused to testify about the facts leading up to the homicide of her stepson. The trial court ruled that Mrs. Hobson could not be asked to testify "about any matters which might incriminate her and which might be within her Fifth Amendment privilege." 232 Kan. at 256. On appeal, the defendant argued his counsel should have been permitted to question Mrs. Hobson. After examining case law from numerous other jurisdictions, this court affirmed the trial court and determined that the questions proposed by the defense counsel were such that the witness would have had to invoke the privilege, before the jury, had the questions been propounded. The court held "[i]t is improper conduct for either the prosecution or the defense knowingly to call a witness who will claim a privilege, for the purpose of impressing upon the jury the fact of the claim of privilege." 232 Kan. 254, Syl. ¶ 1.

This reasoning is not directly applicable here, however, because it assumes a *valid* claim of privilege was made by the witness. In *Crumm,* Mrs. Hobson's claim of privilege was clearly valid because Mrs. Hobson had not yet been charged with the murder of her stepson (a crime for which she was ultimately convicted), she had not been tried and convicted of homicide, and she had not pled guilty to any charge. In the present case, however, Donald Anderson had already pled guilty to aggravated robbery. Under the general rule, a witness cannot claim a Fifth Amendment privilege with respect to those matters to

which he has pled guilty. Annot., 9 A.L.R.3d 990, § 2. If the general rule applies, Donald Anderson's claim of privilege was invalid and the trial court did not err in compelling him to testify.

The appellant argues, however, that Donald's claim of privilege was valid because: (1) He could still be charged with conspiracy to commit aggravated robbery; (2) he had not been sentenced for aggravated robbery; and (3) he could still appeal from the denial of his motion to withdraw his plea.

The appellant's argument is at least partially meritorious and is supported by both federal and state authority. For example, in *United States v. Johnson,* 488 F.2d 1206 (1st Cir. 1973), the court held that although a guilty plea generally waives a witness' Fifth Amendment privilege, where the witness may be subject to prosecution for other offenses, the witness' refusal to testify in the trial of a joint defendant was justified. See *United States v. Gloria,* 494 F.2d 477 (5th Cir.), *cert denied* 419 U.S. 995 (1974); *United States v. Ward,* 314 F. Supp. 261 (E.D. La. 1970).

Further, in *Mills v. United States,* 281 F.2d 736 (4th Cir. 1960), the court held that where a witness had pled guilty to robbery but had not yet been sentenced, nor had her appeal time run, the witness could not be compelled to testify against her accomplice. The court reasoned that statements made by the witness, if she were required to testify, could impact upon the disposition of her appeal or the fixing of sentence. See *Taylor v. Best,* 746 F.2d 220 (4th Cir. 1984); *Ottomano v. United States,* 468 F.2d 269 (1st Cir. 1972), *cert. denied* 409 U.S. 1128 (1973).

Numerous state courts have reached similar conclusions. See, *e.g., Com. v. Garland,* 475 Pa. 389, 395, 380 A.2d 777 (1977), where the Pennsylvania court held that a witness who had pled guilty but was awaiting sentence could not be said to have waived his privilege against self-incrimination "until, at the very least, sentence is imposed." Accord *People v. Villa,* 671 P.2d 971 (Colo. App. 1983) (where witness was in process of appealing sentence at time he was called to testify at trial of codefendant, trial court erred in refusing to recognize witness' Fifth Amendment right to remain silent); *People v. Lindsay,* 69 Mich. App. 720, 245 N.W.2d 343 (1976) (codefendant did not waive privilege against self-incrimination by plea of guilty where he was appealing his guilty plea conviction); *State v. McConnohie,* 121

Wis.2d 57, 358 N.W.2d 256 (1984) (court did not err in sustaining privilege claim where witness had pled no contest but had not been sentenced for being a party to the crime for which defendant was being tried).

Thus, we hold that under the facts of the present case, the trial court erred in finding that Donald Anderson had waived his privilege against self-incrimination. However, we further hold that the appellant was not prejudiced by the limited statements made by Donald Anderson at trial. Anderson first testified that he participated in the robbery with the appellant but refused to answer any further questions. Anderson later testified he could not remember whether the appellant participated in the robbery.

In light of the testimony of Miss Swanson and Miss Shetler, Donald Anderson's testimony clearly was not critical to the State's case. Further, any inference made by the jury regarding Anderson's refusal to testify was inconsequential. No reversible error was committed and the judgment of the trial court is affirmed.

MILLER, McFARLAND, LOCKETT, and ALLEGRUCCI, JJ., concur in the result.