No. 124,598

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RICHARD DANIEL SHOWALTER,
*Defendant*,
(MATTHEW DOUGLAS HUTTO),
*Appellant*.

SYLLABUS BY THE COURT

1.

Once defendants waive their privilege against self-incrimination under the Fifth Amendment to the United States Constitution as to a crime, they permanently waive this privilege because no future testimony could expose them to additional criminal punishment.

2.

Unless defendants move to withdraw their guilty plea before sentencing, their Fifth Amendment privilege against self-incrimination terminates at sentencing.

3.

Defendants' Fifth Amendment privilege against self-incrimination which springs from moving to withdraw a guilty plea before sentencing is wholly preeminent over defendants' Fifth Amendment privilege against self-incrimination which springs from moving to withdraw their guilty plea after sentencing.

1

Appeal from Shawnee District Court; DAVID DEBENHAM, judge. Opinion filed December 16, 2022. Affirmed.

*Shawna R. Miller*, of Miller Law Office, LLC, of Holton, for appellant.

*Kristafer R. Ailslieger*, deputy solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., GREEN and MALONE, JJ.

GREEN, J.: The trial court directed Matthew Douglas Hutto to testify after Hutto invoked his privilege against self-incrimination under the Fifth Amendment to the United States Constitution. The trial court told Hutto that he no longer had the privilege against self-incrimination because our Supreme Court had just announced its decision denying his postsentencing motion to withdraw his two felony murder guilty pleas. *State v. Hutto*, 313 Kan. 741, 743-44, 751, 490 P.3d 43 (2021). It also told him that he no longer had the privilege because the State had granted him use immunity. Ultimately, because Hutto would not comply with its direction to testify, the trial court found Hutto in direct contempt of court.

Hutto appeals his direct contempt conviction, arguing that our Supreme Court's precedent does not support the trial court's reasons for ruling that he no longer had the privilege against self-incrimination. He contends that a person continues to have the privilege against self-incrimination until he or she has exhausted all methods of attacking his or her underlying criminal convictions and sentences. He also asserts that the trial court's ruling about the State's grant of use immunity contradicts our Supreme Court's holding in *State v. Delacruz*, 307 Kan. 523, 535, 411 P.3d 1207 (2018).

In response, although the State concedes that its grant of use immunity to Hutto did not terminate Hutto's privilege against self-incrimination under the *Delacruz* holding,

it, however, argues that our Supreme Court's other precedent supports the trial court's ruling. It contends that most of our Supreme Court's caselaw supports that a person who pleaded guilty to a crime loses the privilege against self-incrimination when sentenced for that crime. Relying on this interpretation of our Supreme Court caselaw, the State argues that when Hutto refused to testify, Hutto no longer had the privilege against self-incrimination. Then, it argues that we should affirm Hutto's direct contempt conviction for violating the trial court's legitimate direction to testify.

In *Delacruz*, our Supreme Court held that "[a] court cannot lawfully compel a witness to testify based upon the State's grant of mere use immunity." 307 Kan. 523, Syl. ¶ 5, 534-35. Indeed, the court explained the significant hurdle that must be cleared before a court can compel a witness to testify: "[I]f the government wants to compel testimony from a witness claiming the Fifth Amendment privilege against compulsory self-incrimination, it must grant the witness at least use and *derivative use immunity*, otherwise a citation in contempt must be reversed." (Emphasis added.) 307 Kan. at 535. So, as Hutto argues and the State concedes, the trial court erred when it ruled that Hutto no longer had the privilege against self-incrimination because of the State's grant of use immunity. Hence, under the *Delacruz* precedent, we hold that the trial court erred when it determined that Hutto no longer had the privilege against self-incrimination because of the State's grant of use immunity. See *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017) (holding that this court is duty-bound to follow our Supreme Court precedent absent some indication that our Supreme Court is moving away from that precedent). And because the trial court plainly erred in this respect, it is not necessary for us to further address this issue.

As for Hutto's argument that a person retains the Fifth Amendment privilege against self-incrimination until he or she has exhausted all methods of attacking his or her underlying criminal convictions and sentences, the State correctly argues that our Supreme Court's precedent does not support his position. A critical fact that the parties

largely ignore is that *Hutto pleaded guilty to two counts of felony murder and did not move to withdraw his felony murder guilty pleas until after he was sentenced*. In short, our Supreme Court precedent establishes that defendants lose their privilege against self-incrimination at sentencing when they have pleaded guilty and have failed to move to withdraw their guilty plea before sentencing. Here, because Hutto was sentenced before he attempted to withdraw his felony murder guilty pleas, Hutto lost his privilege against self-incrimination when sentenced for those crimes. The privilege did not extend until he exhausted all postsentencing methods of attacking his convictions and sentences. So, when Hutto refused to testify—citing the privilege against self-incrimination—the trial court correctly directed Hutto to testify because he no longer had a valid Fifth Amendment privilege. As a result, we affirm Hutto's direct contempt conviction for violating the trial court's direction.

FACTS

On July 26, 2018, the State charged Hutto with two counts of first-degree murder, one count of conspiracy to commit first-degree murder, and one count of aggravated burglary. *Hutto*, 313 Kan. at 743-44. Later, the State amended its complaint to also charge Hutto with two alternative counts of felony murder, one count of attempted first-degree murder, and one count of opiate possession. Evidence indicated that Hutto was involved in the murder of Lisa Sportsman and Jesse Polinskey. During an interview with law enforcement, Hutto admitted to traveling from Greenleaf, Kansas, to Topeka, Kansas, to murder Lisa with Brad Sportsman (Lisa's husband), Richard Showalter, and Cole Pingel. 313 Kan. at 743. Although he denied physically participating in the murders, he told law enforcement that he had helped Showalter enter Lisa's house so Showalter could murder Lisa.

Once the State filed its charges, Hutto began plea negotiations. Initially, Hutto considered cooperating with the State to get a better plea deal. Under his ultimate plea

4

agreement, though, Hutto did not have to give the State evidence against his accused murder accomplices. Rather, under this agreement, Hutto agreed to plead guilty to two counts of felony murder in exchange for the State's dismissal of his remaining charges. Also, under this agreement, Hutto could ask the trial court to impose concurrent sentences, rather than consecutive sentences, for his two felony murder convictions.

On January 18, 2019, Hutto pleaded guilty to the felony murder of Lisa and Polinskey in accordance with his plea agreement with the State. On May 10, 2019, the trial court sentenced Hutto to two consecutive hard 25 life sentences.

After his sentencing, Hutto did not directly appeal to our Supreme Court. But on May 22, 2019, he did file a pro se motion to withdraw his felony murder guilty pleas. Hutto argued that he received ineffective assistance of plea counsel for a variety of reasons, which meant that he should be allowed to withdraw his guilty pleas. *Hutto*, 313 Kan. at 744. The trial court disagreed, denying Hutto's motion on February 11, 2020.

On February 17, 2020, Hutto appealed the trial court's decision to deny his postsentencing motion to withdraw his felony murder guilty pleas to our Supreme Court. In the end, our Supreme Court rejected the only argument Hutto raised on appeal. Hutto asserted that his plea counsel "was ineffective to the extent of misleading him and preventing him from entering into the plea in a voluntary fashion" because plea counsel failed to tell him about his "viable compulsion defense." *Hutto*, 313 Kan. at 745-46. But our Supreme Court rejected this argument for the following reasons: (1) because he had not adequately briefed it before the trial court, (2) because he had no viable compulsion defense under the evidence of his case, and (3) because plea counsel was not ineffective under the facts of his case. 313 Kan. at 746-51.

On July 9, 2021, our Supreme Court announced its decision affirming the trial court's denial of Hutto's postsentencing motion to withdraw his felony murder guilty pleas. On August 13, 2021, our Supreme Court issued its mandate.

Between these two events, however, the State started its jury trial against Hutto's accused felony murder accomplice—Showalter. The State had charged Showalter with two counts of first-degree murder as well as a single count each of conspiracy to commit first-degree murder, attempted first-degree murder, solicitation to commit first-degree murder, aggravated burglary, aggravated witness intimidation, and opiate possession. Because Showalter was Hutto's accused felony murder accomplice, the State subpoenaed Hutto to testify against Showalter at Showalter's jury trial. Nevertheless, when the State called Hutto to testify at the trial on July 13, 2021, Hutto refused to testify against Showalter.

The State questioned Hutto outside the presence of the jury with his attorney present. After the prosecutor asked Hutto why he was convicted of two felony murders, Hutto responded that he was "plead[ing] the Fifth." The prosecutor then asserted that Hutto no longer had the privilege against self-incrimination. According to the prosecutor, Hutto "no longer ha[d] an evidentiary privilege to refuse to testify" for three reasons: (1) because the trial court had already sentenced him for his crimes, (2) because our Supreme Court had already affirmed the denial of his postsentencing motion to withdraw guilty pleas, and (3) because the State had given him use immunity.

Relying on the prosecutor's arguments, the trial court ruled that Hutto no longer had the Fifth Amendment privilege against self-incrimination. And as a result, it directed Hutto to testify against Showalter. In doing so, it told Hutto that it could find him in contempt of court for refusing its direction to testify. It also explained that it could immediately impose up to a six-month jail sentence on him for a direct contempt conviction.

But Hutto still refused to testify. He told the trial court that he understood its direction to testify. Yet, he explained that he would not testify because any contempt sentence that it could impose was negligible compared to the two consecutive hard 25 life sentences that he was serving for his felony murder convictions. "There [was] no reason to testify" based on these sentencing disparities. As a result, the trial court found Hutto in direct contempt of court. See K.S.A. 20-1203 (explaining the punishment procedures for direct contempt convictions).

Although the trial court found Hutto in direct contempt for refusing to testify, it gave Hutto the opportunity to purge himself of his contempt. Thus, on July 16, 2021, at the end of the State's case against Showalter, the State recalled Hutto to see if he would testify. Again, the State questioned Hutto outside the presence of the jury with his attorney present. But Hutto still refused to testify. Then, the trial court imposed a six-month jail sentence on Hutto for his direct contempt conviction. It ordered Hutto to serve this jail sentence after serving his consecutive felony murder sentences.

Hutto timely appeals his direct contempt conviction to this court.

ANALYSIS

*Did Hutto have a valid Fifth Amendment privilege against self-incrimination when he refused to testify?*

Under the Fifth Amendment, "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." The privilege applies to the States through the Fourteenth Amendment to the Unites States Constitution. See *State v. George*, 311 Kan. 693, 707, 466 P.3d 469 (2020). Also, Section 10 of the Kansas Constitution Bill of Rights provides the same protection as it prohibits compelling a person to "be a witness against himself." 311 Kan. at 708.

7

Whether a person has a valid Fifth Amendment privilege against self-incrimination to invoke constitutes a question of law over which this court exercises de novo review. *State v. Contreras*, 313 Kan. 996, 999, 492 P.3d 1180 (2021). When a witness invokes the privilege against self-incrimination, the party seeking to admit evidence over the witness' invocation carries the burden of proving to the trial court that no privilege exists. 313 Kan. at 1000.

The purpose of the privilege is to "protect[] both a defendant and any other witness whose answers may expose him [or her] to future criminal liability," from being forced to testify against himself or herself. *State v. Longobardi*, 243 Kan. 404, 407, 756 P.2d 1098 (1988). "The most straightforward application of this right is refusing to testify at one's own criminal trial." *George*, 311 Kan. at 708. Yet, a person may invoke the Fifth Amendment privilege against self-incrimination in other situations. 311 Kan. at 708. Indeed, the United States Supreme Court has explained that a person may have a valid Fifth Amendment privilege against self-incrimination whenever asked to "answer official questions" that may result in future criminal prosecution:

> "[T]he Fifth Amendment 'not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.'" *Baxter v. Palmigiano*, 425 U.S. 308, 316, 96 S. Ct. 1551, 1557, 47 L. Ed. 2d 810 (1976) (quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77, 94 S. Ct. 316, 38 L. Ed. 2d 274 [1973]).

Although a person may invoke the Fifth Amendment privilege against self-incrimination in a variety of official proceedings, our Supreme Court has explained that a person's "Fifth Amendment privilege is not without limits" because it ends at some point. *State v. Bailey*, 292 Kan. 449, 460, 255 P.3d 19 (2011). Here, Hutto's appeal hinges on when his Fifth Amendment privilege against self-incrimination terminated. If Hutto's privilege terminated before he refused the trial court's direction to testify, then Hutto's

8

refusal to testify supports his direct contempt conviction. On the other hand, if Hutto still had the privilege against self-incrimination when he refused the trial court's direction to testify, then Hutto's refusal to testify does not support his direct contempt conviction.

On appeal, Hutto never suggests that he had a valid Fifth Amendment privilege against self-incrimination because his trial testimony could have exposed him to punishment additional to his felony murder convictions and sentences. Rather, he argues that he still had the privilege against self-incrimination when the trial court found him in direct contempt for refusing to testify for the following reasons: (1) because he still had time to move under the Kansas Supreme Court Rule 7.06 (2022 Kan. S. Ct. R. at 51) for our Supreme Court to rehear his appeal and (2) because he still had time to move for relief under K.S.A. 60-1507. To support his argument, Hutto relies on language from our Supreme Court's decision in *State v. Smith*, 268 Kan. 222, 235, 993 P.2d 1213 (1999). There, our Supreme Court held that "[t]he Fifth Amendment privilege against self-incrimination extends until there is a final judgment in a case and *a right to appeal has expired*." (Emphasis added.) 268 Kan. at 235. Based on this holding, Hutto concludes that although our Supreme Court had already announced its decision affirming the trial court's denial of his motion to withdraw guilty pleas, he still had the privilege against self-incrimination until he exhausted all methods of attacking his convictions and sentences.

The State's response recognizes the *Smith* court's holding that a person's Fifth Amendment privilege against self-incrimination "'extends until there is a final judgment in a case and a right to appeal has expired.'" It also recognizes that in *George*, our Supreme Court acknowledged that it had "framed the extent" of the privilege differently in different cases. 311 Kan. at 708. Even so, the State argues that, overall, our Supreme Court precedent supports that a person's privilege against self-incrimination ends when the trial court sentences that person. It argues that at that point, the person cannot face anymore adverse consequences for his or her crimes. Alternatively, the State argues that Hutto had no privilege against self-incrimination when he refused to testify because our

9

Supreme Court's decision "was effective upon its publication." Essentially, the State argues that Hutto's privilege ended when our Supreme Court announced its decision rather than when our Supreme Court issued its mandate. But see Kansas Supreme Court Rule 7.03(b)(1)(A)(iii), (C) (2022 Kan. S. Ct. R. at 46) (providing that a mandate issues after an event finally disposing of the appeal and that a "mandate is effective when issued").

Here, although the trial court's analysis why Hutto no longer had the Fifth Amendment privilege against self-incrimination did not explicitly point it out, when it found Hutto in direct contempt, it recognized two important facts: (1) that Hutto had pleaded guilty to two counts of felony murder and (2) that our Supreme Court had affirmed Hutto's appeal from *his postsentencing motion to withdraw guilty pleas*. Similarly, although neither party's analysis before the trial court or on appeal emphasizes these facts, both parties implicitly recognize that *Hutto moved to withdraw his guilty pleas after sentencing*. In any case, the trial court ruled, and the State argues that Hutto's privilege against self-incrimination terminated once the trial court sentenced Hutto.

A. *Reviewing our Supreme Court on the Fifth Amendment Privilege Against Self-Incrimination*

In *Mitchell v. United States*, 526 U.S. 314, 326, 119 S. Ct. 1307, 143 L. Ed. 2d 424 (1999), the majority of the United States Supreme Court suggested that a person's Fifth Amendment privilege against self-incrimination ends after sentencing as long as that person's judgment of conviction is final. It explained:

"It is true, as a general rule, that where there can be no further incrimination, there is no basis for the assertion of the privilege. We conclude that principle applies to cases in which the sentence has been fixed and the judgment of conviction has become final. See, e.g., *Reina v. United States*, 364 U.S. 507, 513, 81 S. Ct. 260, 5 L. Ed. 2d 249

10

(1960). If no adverse consequences can be visited upon the convicted person by reason of further testimony, then there is no further incrimination to be feared." 526 U.S. at 326.

The *Reina* decision that the *Mitchell* Court cited provides that there is "weighty authority" that a person's privilege against self-incrimination ends "once a person is convicted of a crime." *Reina*, 364 U.S. at 513. So, taken together, the *Mitchell* and *Reina* decisions support that if a person is not directly challenging his or her underlying conviction, that person's Fifth Amendment privilege against self-incrimination ends upon sentencing.

Over the years, our Supreme Court has considered several appeals involving the Fifth Amendment privilege against self-incrimination. In *State v. Anderson*, 240 Kan. 695, 698, 732 P.2d 732 (1987), our Supreme Court considered Anderson's argument that the trial court erred when it directed a witness—a person who had already pleaded guilty to committing a robbery with Anderson—to testify against Anderson at his jury trial for related crimes. Anderson argued that the witness still had the Fifth Amendment privilege against self-incrimination (1) because he had not been sentenced and (2) because he still had time to appeal the denial of his motion to withdraw his guilty plea. 240 Kan. at 700. Our Supreme Court agreed that the trial court erred because "although a guilty plea generally waives a witness' Fifth Amendment privilege, where the witness may be subject to prosecution for other offenses, the witness' refusal to testify in the trial of a joint defendant was justified." 240 Kan. at 700. In its second syllabus, it further held that a "witness cannot be compelled to testify against an accomplice where the witness has already pled guilty but has not yet been sentenced *nor has his time for appeal expired*." (Emphasis added.) 240 Kan. 695, Syl. ¶ 2.

Although the *Anderson* court never explicitly acknowledged it, the fact that the witness filed a presentencing motion to withdraw a guilty plea clearly played a role in its decision. The *Anderson* court's second syllabus supports this fact as it states that a

11

witness who "already pled guilty but has not yet been sentenced" still has a privilege against self-incrimination. 240 Kan. 695, Syl. ¶ 2.

Even so, shortly after our Supreme Court published *Anderson*, our Supreme Court modified *Anderson*'s second syllabus to delete the language indicating that a witness who pleaded guilty keeps the privilege against self-incrimination through appeal. In *Longobardi*, 243 Kan. at 408, the specific question before our Supreme Court was "[a]t what point does a defendant's Fifth Amendment privilege against self-incrimination end after his plea of guilty has been accepted?" 243 Kan. at 408-09. Longobardi argued that the trial court wrongly ruled that a person he intended to call as a hostile witness—a person who had already pleaded guilty to being his murder and aggravated robbery accomplice—still had the privilege against self-incrimination at his jury trial for related crimes because he still had time to appeal. 243 Kan. at 407. Longobardi asserted that for self-incrimination purposes, it was irrelevant that the witness still had "time for appeal, rehearing, [and] sentence modification," since the witness had already pleaded guilty and had been sentenced for second-degree murder and aggravated burglary. 243 Kan. at 407-08.

In the end, our Supreme Court agreed that the witness had no Fifth Amendment privilege against self-incrimination. It distinguished Longobardi's case from Anderson's case. It explained that unlike his case, in *Anderson*, (1) the witness had not been sentenced and (2) the witness still had time to appeal his presentencing motion to withdraw guilty pleas. 243 Kan. at 409. Then, it ruled: "[O]nce a plea of guilty has been regularly accepted by the court, *and no motion is made to withdraw it*, the privilege against self-incrimination ends after sentence is imposed." (Emphasis added.) 243 Kan. at 409. In doing so, it explicitly modified the second syllabus in *Anderson* to be limited to this holding. 243 Kan. at 409. It is worth mentioning that the *Longobardi* court's corresponding syllabus for this holding is worded somewhat differently: "The privilege against self-incrimination ends after sentence is imposed where a plea of guilty has been

regularly accepted by the court, and no motion is made to withdraw it." 243 Kan. 404, Syl. ¶ 1. All the same, the *Longobardi* court determined that the witness no longer had the privilege against self-incrimination (1) because the witness never moved to withdraw his guilty pleas and (2) because the witness had been sentenced for his crimes. 243 Kan. at 409.

Clearly, the *Longobardi* court concluded that unless a person moves to withdraw a guilty plea before sentencing, that person's Fifth Amendment privilege ends when sentenced. The plain language of its holding modifying *Anderson*'s second syllabus supports this conclusion. Also, the specific language that it rejected in *Anderson*'s second syllabus supports this. The *Longobardi* court's modification specifically removed the language in *Anderson*'s second syllabus indicating that a person who pleads guilty continues to have the privilege against self-incrimination until his or her "time for appeal expired." *Anderson*, 240 Kan. 695, Syl. ¶ 2; see *Longobardi*, 243 Kan. at 410. Simply put, our Supreme Court would not have modified *Anderson*'s second syllabus unless it deemed that this modification was important. Thus, our Supreme Court's decision to remove the language indicating that the privilege extends through appeal for people who have pleaded guilty to crimes is very significant.

The way the *Longobardi* court worded the modification also supports that unless a person moves to withdraw his or her guilty plea before sentencing, that person's privilege against self-incrimination terminates at sentencing. Again, the *Longobardi* court held that "once a plea of guilty has been regularly accepted by the court, *and no motion is made to withdraw it*, the privilege against self-incrimination ends after sentence is imposed." (Emphasis added.) 243 Kan. at 409. As a result, the *Longobardi* court placed the clause "and no motion is made to withdraw it" before discussing sentencing. By doing this, it clarified that when a person does not move to withdraw a guilty plea before sentencing, that person's privilege against self-incrimination ends upon sentencing.

13

Also, this would seem the only sound way to interpret the *Longobardi* court's holding. To interpret the *Longobardi* court's holding otherwise and to allow a person to validly invoke the privilege against self-incrimination after moving to withdraw a guilty plea after sentencing would result in the following: a person losing and then regaining this privilege again. Under such an interpretation, individuals who plead guilty to a crime, who are then sentenced, and who later move to withdraw their guilty plea after sentencing would technically lose their Fifth Amendment privilege against self-incrimination under *Longobardi*. But then they could regain their Fifth Amendment privilege against self-incrimination upon moving to withdraw their guilty plea after sentencing under *Smith*.

So, we pause to ask this question: Can the *Longobardi* and *Smith* decisions coexist in harmony with each other? About a decade after deciding *Longobardi*, in *Smith*, our Supreme Court discussed the privilege against self-incrimination in the context of Smith's argument that the trial court wrongly failed to sever his theft and conspiracy to commit theft jury trial from his codefendant's jury trials for the same crimes. Although Smith argued that his codefendants could have testified on his behalf at his hypothetical severed jury trial, our Supreme Court rejected Smith's argument because his codefendants could have invoked the privilege against self-incrimination at his hypothetical severed jury trial. In doing so, the court held that "[t]he Fifth Amendment privilege against self-incrimination extends until there is a final judgment in a case *and a right to appeal has expired*. See *State v. Aldape*, 14 Kan. App. 2d 521, 526, 794 P.2d 672, *rev. denied* 247 Kan. 705 (1990)." (Emphasis added.) *Smith*, 268 Kan. at 235. Thus, the *Smith* court's holding supports that the privilege against self-incrimination extends until the "right to appeal has expired." 268 Kan. at 235.

But the preceding holding in *Smith* has been called into question. First, unlike the *Anderson* and *Longobardi* courts, which had to resolve the extent of actual witnesses' privileges against self-incrimination, the *Smith* court discussed the privilege in passing to

14

undermine Smith's argument about severing his hypothetical trial from his codefendants. Second, the *Smith* court's holding is very broad. It never clarified what "right to appeal" must expire before a person's privilege against self-incrimination ends. Third, the *Smith* court relied on language from this court's *Aldape* decision to support its holding. Yet, the *Aldape* court never held that a person keeps the privilege against self-incrimination after sentencing. Rather, it concluded that "the risk of incrimination continues until there is a final judgment in a case *and a right to appeal*." (Emphasis added.) 14 Kan. App. 2d at 526. In other words, the *Aldape* court held that the risk of incrimination continues until a person *attains* the right to appeal following final judgment. Fourth, the *Smith* court never acknowledged the *Longobardi* decision even though the *Longobardi* court's conflicting holding modified *Anderson*'s second syllabus by explicitly stating that unless a person moves to withdraw a guilty plea before sentencing, that person loses the privilege against self-incrimination upon sentencing. So, the *Smith* court's holding lacks a sound basis for saying that "[t]he Fifth Amendment privilege against self-incrimination extends until there is a final judgment in a case and a right to appeal has expired." 268 Kan. at 235.

Next, although the *Smith* court never discussed the *Longobardi* decision, our Supreme Court's more recent decisions involving the extent of the Fifth Amendment privilege against self-incrimination have relied on its *Longobardi* holding. Our Supreme Court's 2011 *Bailey* decision, 2015 *Soto* decision—*State v. Soto*, 301 Kan. 969, 349 P.3d 1256 (2015)—and 2020 *George* decision all cite *Longobardi* for the proposition that "'[t]he privilege against self-incrimination ends after sentence is imposed where a plea of guilty has been regularly accepted by the court, and no motion is made to withdraw it.'" *George*, 311 Kan. at 707; *Soto*, 301 Kan. at 980; *Bailey*, 292 Kan. at 460.

In *Bailey*, Bailey argued that the trial court erred by telling the State's witness—a person who had already been sentenced for murder after pleading guilty to being Bailey's murder accomplice—that he had a valid Fifth Amendment privilege against self-incrimination when he invoked it at his jury trial. Bailey argued that the witness still had

the privilege because he still had an appeal pending. But our Supreme Court rejected Bailey's argument. It held that "[b]ecause [the witness] had *entered a guilty plea and had been sentenced*, the trial court was correct in finding that [the witness] had no Fifth Amendment privilege protecting the events in this case." (Emphasis added.) 292 Kan. at 463. Immediately before it reached this holding, the *Bailey* court quoted the *Longobardi* court's holding that "'once a plea of guilty has been regularly accepted by the court, and no motion is made to withdraw it, the privilege against self-incrimination ends after sentence is imposed.'" 292 Kan. at 462. Meanwhile, in *Soto*, while considering a *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), violation claim, our Supreme Court relied on the same *Longobardi* holding to conclude that a person—who had pleaded guilty to committing a murder with Soto—had the privilege against self-incrimination past the end of Soto's jury trial. This was because although the person had pleaded guilty to murder and had not withdrawn his guilty plea, he was sentenced after Soto's jury trial ended. 301 Kan. at 977, 980.

As a result, our Supreme Court's holdings in *Bailey* and *Soto* undermine our Supreme Court's holding in *Smith* that the Fifth Amendment privilege against self-incrimination extends until the "right to appeal has expired." 268 Kan. at 235. Indeed, our Supreme Court's rejection of Bailey's argument that the witness kept the privilege through appeal because the witness had entered a guilty plea and the witness had been sentenced plainly contradicts the *Smith* court's holding that a person who pleads guilty to a crime retains the privilege through appeal. At the same time, the *Bailey* and *Soto* decisions reaffirm the validity of the *Longobardi* court's contradictory holding because both relied on *Longobardi* in determining whether the people at issue had a valid Fifth Amendment privilege against self-incrimination after pleading guilty to murder.

*George* is the most recent decision discussing *Longobardi*. There, George argued that the trial court wrongly ruled that his intended witness—a person who had already pleaded *no contest* to second-degree murder, had been sentenced, but had a pending

16

appeal—still had a valid Fifth Amendment privilege against self-incrimination when he invoked the privilege at his first-degree murder jury trial. 311 Kan. at 704-06. The trial court determined that the witness' privilege extended through his appeal. 311 Kan. at 705. Ultimately, the *George* court "decline[d] to decide whether *a plea of nolo contendere* waives the privilege against self-incrimination after sentencing but before the conclusion of the direct appeals" because any error by the trial court was harmless under the specific facts of George's case. (Emphasis added.) 311 Kan. at 709.

In reaching its decision, though, our Supreme Court provided the following summary of its caselaw discussing the extent of the privilege against self-incrimination:

> "There is no doubt that the privilege against self-incrimination extends at least through sentencing. *State v. Gary*, 282 Kan. 232, 249, 144 P.3d 634 (2006); *State v. Valdez*, 266 Kan. 774, 794, 977 P.2d 242 (1999) ('There is no doubt that an individual's right against self-incrimination extends through sentencing.'); *State v. Aldape*, 14 Kan. App. 2d 521, 526, 794 P.2d 672 (1990) ('[T]he right against self-incrimination extends through sentencing.'); see also *Mitchell v. United States*, 526 U.S. 314, 327, 119 S. Ct. 1307, 143 L. Ed. 2d 424 (1999) ('[A] defendant who awaits sentencing after having pleaded guilty may assert the privilege against self-incrimination if called as a witness in the trial of a codefendant, in part because of the danger of responding "to questions that might have an adverse impact on his sentence or on his prosecution for other crimes."').
>
> "Elsewhere, we framed the extent of the right more broadly as extending through the completion of all appeals. *Smith*, 268 Kan. at 235 (The right 'extends until there is a final judgment in a case and a right to appeal has expired.'). But in other cases, we have suggested that a guilty plea may result in a waiver of the privilege against self-incrimination during the pendency of any appeal. For example, in *State v. Soto*, 301 Kan. 969, 980, 349 P.3d 1256 (2015), we stated that the "'privilege against self-incrimination *ends after sentence is imposed where a plea of guilty has been regularly accepted* by the court, and no motion is made to withdraw it."' (Emphasis added.) (Quoting *Bailey*, 292 Kan. at 460, and *Longobardi*, 243 Kan. 404, Syl. ¶ 1.)" 311 Kan. at 708-09.

17

So, the *George* court recognized that the court's past holdings discussing when a person's Fifth Amendment privilege against self-incrimination ends differed in different cases. It recognized that its holding in *Smith* about the privilege extending through appeal conflicted with its other cases, which held that unless a person moves to withdraw guilty plea before sentencing a person who pleads guilty to a crime loses the privilege upon sentencing. Yet, the *George* court neither modified nor overruled its interpretation or application of the privilege against self-incrimination in the *Longobardi*, *Smith*, *Bailey*, or *Soto* decisions. As indicated in the preceding excerpt from *George*, the *George* court never engaged in an in-depth review of the *Longobardi*, *Smith*, *Bailey*, or *Soto* decisions. Of course, the *George* court did not need to engage in an in-depth review because it rejected George's argument based on harmless error.

B. *Applying our Supreme Court Precedent on the Fifth Amendment Privilege Against Self-Incrimination*

Having reviewed our Supreme Court's precedent addressing when a person's Fifth Amendment privilege against self-incrimination ends, it is readily apparent that Hutto did not have a valid Fifth Amendment privilege when he invoked the privilege at Showalter's trial.

Hutto's entire argument about having the privilege against self-incrimination hinges on the *Smith* and *Aldape* decisions. In his appellant's brief, these are the only cases Hutto cites to support his argument. But Hutto merely cites to the *Smith* and *Aldape* decisions without any further analysis regarding the correctness of the *Smith* court's holding that the privilege against self-incrimination extends through appeal. Additionally, he does not address our Supreme Court precedent in *Anderson*, *Longobardi*, *Bailey*, or *Soto* supporting that unless a person moves to withdraw a guilty plea before sentencing, that person loses the privilege against self-incrimination upon sentencing.

18

Regardless, as previously explained, the *Smith* court's holding that a person retains the privilege "until the right to appeal has expired" is thrown into question for the following reasons: (1) the holding stems from a hypothetical privilege issue; (2) the holding contains broad language; (3) the holding hinges on misinterpreting language from *Aldape*; and (4) the holding ignores the *Longobardi* court's conflicting precedent. Once more, the *Longobardi* court explicitly modified the second syllabus of *Anderson* to provide that "once a plea of guilty has been regularly accepted by the court, and no motion is made to withdraw it, the privilege against self-incrimination ends after sentence is imposed." The *Bailey* and *Soto* decisions, which our Supreme Court decided more than a decade after the *Smith* decision, reaffirmed the *Longobardi* holding. And in *Bailey*, our Supreme Court applied *Longobardi*'s holding to conclude that a witness lacked the privilege through his pending appeal. 292 Kan. at 463.

Although Hutto points out that he still had time to file certain motions when he invoked the privilege against self-incrimination, he ignores that those motions were *postsentencing motions*. Again, Hutto specifically points out that when he invoked the privilege, (1) he still had time to move under Rule 7.06 for our Supreme Court to rehear his appeal on his postsentencing motion to withdraw his guilty pleas and (2) he still had time to attack his sentence under K.S.A. 60-1507. Yet, under the *Anderson*, *Longobardi*, *Bailey*, and *Soto* precedents, the fact that Hutto could still file those postsentencing motions is irrelevant. Because Hutto had entered his felony murder guilty pleas and had been sentenced for those crimes without first moving to withdraw his guilty pleas, his privilege against self-incrimination ended upon sentencing.

Also, Hutto's argument ignores that the *Smith* court's holding does not and cannot logically be harmonized with the *Anderson*, *Longobardi*, *Bailey*, and *Soto* precedents. That is to say, the *Smith* court's holding directly conflicts with the results reached by the *Anderson*, *Longobardi*, *Bailey*, and *Soto* courts. In a nutshell, our Supreme Court would not have decided *Anderson*, *Longobardi*, *Bailey*, and *Soto* cases the way it did if it agreed

19

with the *Smith* court's holding that "[t]he Fifth Amendment privilege against self-incrimination extends until there is a final judgment in a case and a right to appeal has expired." 268 Kan. at 235. Even more, Hutto never considers the impracticality of his argument. He contends that his privilege should have extended until he had exhausted all methods of attacking his convictions and sentences after sentencing, which includes moving for relief under K.S.A. 60-1507. Yet, if we were to echo Hutto's suggested application of the privilege, a person could retain the privilege indefinitely as he or she filed successive K.S.A. 60-1507 motions. Then, under Hutto's suggested application of the *Smith* court's holding, it is unclear when, if ever, a person's Fifth Amendment privilege against self-incrimination would terminate.

In *Rogers v. United States*, 340 U.S. 367, 373, 71 S. Ct. 438, 95 L. Ed. 344 (1951), the United States Supreme Court explained that a "[d]isclosure of a fact waives the privilege as to details." This means that once a person waives the privilege against self-incrimination as to a crime, that person permanently waives this privilege because no future testimony could expose the person to additional criminal punishment. 340 U.S. at 373.

As previously noted, we are duty-bound to follow our Supreme Court precedent unless there is some indication that our Supreme Court is moving away from that precedent. *Rodriguez*, 305 Kan. at 1144. Here, there is no evidence that our Supreme Court is moving away from its precedent. A close review of our Supreme Court's decisions establishes that unless a person moves to withdraw a guilty plea before sentencing, that person loses the privilege against self-incrimination to avoid testifying about related criminal conduct upon sentencing. As a result, we must follow this precedent and reject Hutto's argument that he retained the Fifth Amendment privilege against self-incrimination until he had exhausted all methods of attacking his convictions and sentences after sentencing. We conclude that Hutto's privilege against self-incrimination ended upon his sentencing for his two felony murder guilty pleas.

20

So, defendants' Fifth Amendment privilege against self-incrimination which springs from moving to withdraw a guilty plea before sentencing—under the *Longobardi* and *Bailey* precedents—is wholly preeminent over defendants' Fifth Amendment privilege against self-incrimination which springs from moving to withdraw their guilty plea after sentencing under the *Smith* precedent. Both privileges against self-incrimination have real existence—once more, all persons have a Fifth Amendment privilege against self-incrimination. Yet, each stated version of the above privilege excludes the other when defendants move to withdraw their guilty plea after sentencing under the *Smith* precedent. The former privilege against self-incrimination under the *Longobardi* and *Bailey* precedents is incongruous with the latter privilege against self-incrimination under the *Smith* precedent because the *Longobardi* and *Bailey* precedents established that for defendants who pleaded guilty to their crimes, their Fifth Amendment privilege against self-incrimination terminates at sentencing.

In summary, the trial court correctly ruled that Hutto did not have a valid Fifth Amendment privilege against self-incrimination when he invoked the privilege at Showalter's trial. Because Hutto lacked a valid reason for refusing the trial court's direction to testify, the trial court properly found Hutto in contempt for violating its direction. Thus, we affirm Hutto's direct contempt conviction.

Affirmed.